# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MICHELLE TOLSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 07-2181 (RMC) |
| | ) | |
| LINDA SPRINGER, Director U.S. Office | ) | |
| of Personnel Management, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Can an employer be held liable for fostering a hostile work environment when a plaintiff was offended by a coworker's sporadic actions over the course of eleven years: the coworker called her a "bitch" in 1995, sent a threatening email in 2001, bumped her chair in 2004, complained at a retreat in 2005 that he did not like an unnamed colleague, and roughly squeezed plaintiff's arm in 2006? The answer is no, as a matter of law. These incidents are insufficient to support a hostile environment claim under Title VII, 42 U.S.C. § 2000(e) *et seq*. Michelle Tolson brought this action against her employer, Linda Springer, in her official capacity as Director of the U.S. Office of Personnel Management ("OPM"). Ms. Tolson alleges race and gender discrimination in violation of Title VII due to harassment by a coworker. The evidence of harassment that Ms. Tolson points to is insufficiently frequent and severe to implicate Title VII. Further, she fails to cite any evidence that the incidents from 2001 forward occurred *because of* her gender or race. Ms. Tolson also alleges that OPM denied her request for Family Medical

Leave in retaliation for her complaint of discrimination. This claim lacks merit because OPM in fact granted the requested leave. To the extent that OPM was slow to grant the request, this was caused by Ms. Tolson's delay in providing proper medical documentation. Thus, summary judgment will be granted to OPM.

## I. FACTS

Ms. Tolson is an African American woman who has been employed as a program analyst by OPM since 1989. She contends that a coworker, an African American man named James Sparrow, has subjected her to harassment pursuant to five separate incidents since 1995, and that OPM has "turned a blind [eye]" toward the situation. Pl.'s Opp'n [Dkt. #30] at 2.

First, Ms. Tolson avers that in 1995 when she was running for president of Local 32 of the American Federation of Government Employees (the "Union"), Mr. Sparrow told her that the Union "was not a place for a black woman" and he called her "a dressed up garbage can out of Southeast." Def.'s Notice of Filing Tolson Dep. [Dkt. # 29-2] ("Tolson Dep.") at 23 & 28. Ms. Tolson also alleges that Mr. Sparrow called her a "'red bone,' which is a derogatory term for a light skinned African American" and a "red bitch." Pl.'s Ex.[1] 9 (Tolson Aff. at 4) [hereinafter "Tolson Aff."].[2] Ms. Tolson also claims that Mr. Sparrow threatened "to take [her] out mafia style." Tolson Dep. at 32. Ms. Tolson complained about this threat to the OPM security office. *Id*.

---

[1] Plaintiff's Exhibits, some of which are labeled "Attachments," are filed at docket numbers 31 and 32.

[2] Ms. Tolson also contends, based on an affidavit from a former coworker, that Mr. Sparrow referred to her as a "bitch," "red  faced," or "red dressed down trash." Pl.'s Ex. 6 (Miller Aff. at 1).

Second, Ms. Tolson alleges that on February 28, 2001, Mr. Sparrow sent her an email stating that "satan doesn't need any prayers from you!!!!!"  Pl.'s Ex. 8 (email).[3]  The email chain between Ms. Tolson and Mr. Sparrow reads as follows:

> Tolson: DELIVERY FOR ALL BARGAINING UNIT EMPLOYEES: Attached is the AFGE, Local 32 Newsletter for the month of February 2001. . . .
>
> Sparrow: I really don't think you guys are worth the $$$$$$ these poor souls pay you people!!!!!!!!!!
>
> Tolson: James, The government pays us people.  God bless you. Stay informed.
>
> Sparrow: I'm glad to see your dumb ass is proof reading messages before you send me anything!!
>
> Tolson: Hi James, Thanks for the compliment, I hope this email is not being monitored.  God bless and you are still in my prayers. Luv U, Michelle
>
> Sparrow: "satan" doesn't need any prayers from you!!!!!!

*Id*.  Ms. Tolson viewed the email as intimidating.  Pl.'s Opp'n at 3.

Third, Ms. Sparrow alleges that she was assaulted when Mr. Sparrow bumped her chair in 2004.  At that time, Mr. Sparrow had been transferred to the Management Information Branch where Ms. Tolson was assigned.  Ms. Tolson asserts that "[a]t staff meetings he would deliberately leave out, if Plaintiff was giving speaking [sic] or giving a presentation."  Pl.'s at 12.  On August 11, 2004, Mr. Sparrow was seated next to Ms. Tolson at a staff meeting.  Tolson Aff. at 2.  When she began to speak, Mr. Sparrow abruptly got up from his chair and bumped into Ms.

---

[3] Plaintiff's Opposition erroneously cites Exhibit 11 in support of her claim regarding the email.  Pl.'s Opp'n at 12.  Exhibit 11 is OPM's EEO Policy Statement.

Tolson's chair "so hard that her chair was pushed into the table causing her body to fall into the table." Pl.'s Opp'n at 12; *see also* Tolson Aff. at 2.  Ms. Tolson contends that Mr. Sparrow had ample space to move around and that his bumping her chair was an intentional aggressive act toward her because she is an African American woman. Tolson Aff. at 3.  Ms. Tolson complained about this to her supervisor, Marc Flaster, who had attended the meeting where the incident occurred.  When Mr. Flaster later asked Mr. Sparrow why he acted so suddenly, Mr. Sparrow indicated that he had a severe cramp and left the meeting to rush to the bathroom.  Pl.'s Ex. 10 (Flaster Aff. at 3).  Mr. Sparrow also indicated that he and Ms. Tolson did not get along, and he feared that she could harm his career due to her involvement in the Union.  *Id.* at 3.  While Mr. Flaster told Mr. Sparrow to work out his issues with Ms. Tolson, he also made a "conscious effort" not to assign them to the same projects.  *Id.* at 4.

Fourth, Ms. Tolson alleges that Mr. Sparrow harassed her at an April 27, 2005,[4] OPM off-site retreat.  The retreat was attended by Ms. Tolson and Mr. Sparrow, among others. During the retreat, Mr. Sparrow repeatedly asked the facilitator what a person should do if they worked with someone they did not like.  Tolson Dep. at 68.  Ms. Tolson presumed that Mr. Sparrow was talking about her and she felt intimidated.  Tolson Aff. at 6.  Ms. Tolson's coworker, Monique Kennedy, interpreted Mr. Sparrow's comments at the retreat as comments

---

[4] Plaintiff's Complaint refers to the office retreat as occurring in 2006, Compl. ¶ 19, and her Opposition refers to it as occurring in either 2004 or 2005.  Pl.'s Opp'n at 15 & 20.  Because Ms. Tolson's affidavit refers to the event as occurring in 2005, and Mssrs. Flaster and Hershey also place the date in 2005, the Court presumes that 2005 is the correct date.  *See* Tolson Aff. at 6; *see also* Def.'s Notice of Exhibits [Dkt. #28], Report of Investigation ("ROI") Ex. I (Hershey Aff. at 2); ROI Ex. J (Flaster Aff. at 4).

either about herself or about Ms. Tolson.  Pl.'s Ex., Att. 1 (Kennedy Aff. at 3).  Ms. Tolson

complained to Sean Hershey, her supervisor at the time.[5]  Tolson Aff. at 6.

        Finally, Ms. Tolson alleges that Mr. Sparrow assaulted her on July 18, 2006.  *Id.*

at 8.  The incident occurred after a staff meeting when Mr. Sparrow passed between Ms. Tolson

and other employees in the  hallway.  *Id.* at 8-9.  When Mr. Sparrow passed Ms. Tolson, he

allegedly grabbed her arm roughly and pushed her from the spot where she was standing, causing

her to fall against the wall.  *Id.*[6]  After the incident, Ms. Tolson showed coworker Monique

Kennedy a bruise on her arm.  Pl.'s Ex., Att. 1 (Kennedy Aff. at 4).  Ms. Tolson reported the

incident as an assault to OPM's Center for Security and Emergency Action ("CSEA").  Tolson

Aff. at 10.[7]  CSEA reported the allegations to the Federal Protective Service ("FPS").  ROI, Ex. P

(FPS Report).  On the day of the incident, Mr. Hershey placed Ms. Tolson and Mr. Sparrow on

administrative leave, pending further investigation.  *Id.*, Ex. I (Hershey Aff. at 5 ).

        OPM's Employee Labor Relations office undertook an administrative

investigation.  At the end of the investigation, OPM advised Ms. Tolson that there would be no

action taken against her and that the report was confidential.  *Id.*, Ex. K (Peyton Aff. at 2).  OPM

---

[5] Starting on May 1, 2005, Mr. Hershey became the supervisor of the OPM unit where Ms. Tolson was employed.  Mr. Hershey reported to Mr. Flaster, the former supervisor of the unit.

[6] Mr. Hershey saw Mr. Sparrow pass by Ms. Tolson, but he did not see anything other than "incidental" physical contact between them.  Pl.'s Ex., Att. 2 (Hershey Dep. at 25).  For the purpose of this Opinion, the Court will presume that Mr. Sparrow squeezed and bruised Ms. Tolson's arm.

[7] Shortly after the incident in the hallway, Ms. Tolson obtained a restraining order against Mr. Sparrow from D.C. Superior Court.  *See* Pl.'s Ex., Att. 3 (Tolson email).  The restraining order is not in the record.

found that disciplinary action was not warranted.  *Id*.  When Ms. Tolson returned to work in

October of 2006, OPM moved Mr. Sparrow's desk to a different floor.

Ms. Tolson teleworked from July 22, 2006 through August 4, 2006.  On August

29, 2006, Ms. Tolson submitted a request under the Family Medical Leave Act.  *Id.*, Ex. K

(Peyton Aff. at 3).  On September 13, 2006, OPM requested further medical documentation.  *Id*.

Subsequently, Ms. Tolson submitted an October 25, 2006, report from her physician, Dr. Mark

Bradley.  Dr. Bradley stated she had a muscle spasm in her neck and a bruised upper arm.  Pl.'s

Ex., Att. 2 (Dr. Bradley's Memo at 1).  Dr. Bradley also reported that records from Ms. Tolson's

visit to a psychiatrist indicated that she required treatment for anxiety and an "adjustment

disorder."  *Id*.  Thus, Dr. Bradley opined that Ms. Tolson was temporarily disabled and

recommended that she be permitted to work from home from July 18 to October 4, 2006.  *Id*. at

2.  After she submitted the proper paper work, OPM granted Ms. Tolson's request for Family

Medical Leave.  Tolson Dep. at 61.

OPM has moved for summary judgment.[8]  Ms. Tolson opposes.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must

be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

---

[8] OPM moved in the alternative to dismiss due to failure to timely exhaust administrative remedies.  OPM withdrew this claim in its Reply, indicating that it had used the wrong calendar in calculating the relevant deadlines.  Def.'s Reply [Dkt. #34] at 1 n.1.  Thus, the Court will deny the motion to dismiss as moot.

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d

1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party

who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

*Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere

existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the

nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*,

164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that

would enable a reasonable jury to find in its favor. *Id.* at 675. If the evidence "is merely

colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477

U.S. at 249-50 (citations omitted).

### III. ANALYSIS

#### A.  Discrimination Based on Allegations of Hostile Work Environment

Title VII of the Civil Rights Act of 1964 prohibits an employer from

discriminating on the basis of race, color, religion, sex, or national origin in hiring decisions, in

compensation, terms and conditions of employment, and in classifying employees in a way that

would adversely affect their status as employees. 42 U.S.C. § 2000e-16. The Supreme Court has

determined that "[t]he phrase 'terms, conditions, or privileges of employment' evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)).  Therefore, Title VII is violated when a plaintiff demonstrates that the "workplace is permeated with discriminatory intimidation, ridicule, and insult" and that this behavior is "sufficiently severe or pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 21.  To establish a prima facie hostile work environment claim, a plaintiff must demonstrate (1) that she is a member of a protected class, (2) that she was subject to unwelcome harassment, (3) that the harassment occurred because of her race or gender, (4) that the harassment affected a term, condition, or privilege of employment, and (5) that the employer knew or should have known of the harassment, and failed to act to prevent it.  *Lester v. Natsios*, 290 F. Supp. 2d 11, 22 (D.D.C. 2003) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

In determining whether a hostile work environment claim is substantiated, a court must look at all the circumstances of the plaintiff's employment, specifically focusing on such factors as the frequency of the discriminatory conduct, its severity, whether it was threatening and humiliating or was merely offensive, and whether it unreasonably interfered with the employee's work performance.  *Harris*, 510 U.S. at 23.  The conduct must be sufficiently extreme to constitute an alteration in the conditions of employment, so that Title VII does not evolve into a "general civility code."  *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998).

Consequently, "'mere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (quoting *Meritor*, 477 U.S. at 91).  Further, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 778.  A plaintiff must demonstrate that the alleged events leading to the hostile work environment were connected, since "discrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult." *Lester*, 290 F. Supp. 2d at 33 (citing *AMTRAK v. Morgan*, 536 U.S. 101, 115-16 (2002)).  "Workplace conduct is not measured in isolation." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001).

For example, in *George v. Leavitt*, 407 F.3d 405 (D.C. Cir. 2005), the D.C. Circuit held that statements by three employees over a six-month period telling a plaintiff to "go back where she came from," separate acts of yelling and hostility, and allegations that the plaintiff was not given the type of work she deserved, were isolated instances that did not rise to the level of severity necessary to find a hostile work environment.  *Id*. at 416-17.  Similarly, in *Singh v. United States House of Representatives*, 300 F. Supp. 2d 48, 54-57 (D.D.C. 2004), this Court found that a plaintiff's allegations that her employer humiliated her at important meetings, screamed at her in one instance, told her to "shut up and sit down" in one instance, and was "constantly hostile and hypercritical" did not amount to a hostile work environment, even though these actions may have been disrespectful and unfair.  *Accord Bryant v. Brownlee*, 265 F. Supp.

2d 52, 64 (D.D.C. 2003) (finding no hostile work environment where a coworker referred to the plaintiff as "nigger" and shouted at her and where another coworker stated that white men were first and black women were "at the bottom"; the plaintiff's other allegations of harassment lacked race or age-based overtones and instead revealed job-related tensions and personality conflicts).

Ms. Tolson's harassment claim must be dismissed because she does not allege conduct sufficiently severe and pervasive to constitute a hostile work environment.  Ms. Tolson alleges the following five incidents of harassment:

> (1) 1995 – Mr. Sparrow called Ms. Tolson a "red bone" and "bitch" and told her that the Union was "not a place for a black woman";
>
> (2) 2001– Mr. Sparrow sent Ms. Tolson an email stating that "satan doesn't need [her] prayers."
>
> (3) 2004 – Mr. Sparrow bumped Ms. Tolson's chair;
>
> (4) 2005 –  Mr. Sparrow referred to an unnamed colleague that he dislikes at an office retreat; and
>
> (5) 2006 – Mr. Sparrow grabbed and bruised Ms. Tolson's arm when he passed her in the hall.

These incidents are insufficiently severe, pervasive, or race/gender-based to constitute an hostile work environment.

While Ms. Tolson may have been genuinely offended in 1995 when Mr. Sparrow called her a "bitch"and a "red bone" and said that the Union was not a place for a black woman,[9]

---

[9] The term "bitch" is "not always conclusive of sex discrimination."  *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F. 3d 1507, 1513 (D.C. Cir. 1995).  In *Neuren*, the Circuit found that the term "bitch" was used in a performance evaluation in a gender-neutral way to refer to the plaintiff's relations with other employees.  *Id.*  Likewise, the term "red bitch" may refer to a

there is nothing in the record to tie these sexually and racially derogatory remarks with the email,

the chair bumping, the comments at the retreat,[10] or the arm-squeezing incident, which took place

six through eleven years later.  Nor is there any evidence in the record to tie any of these sporadic

events to one another.  These are precisely the type of isolated incidents that do not amount to a

discriminatory change in the terms and conditions of employment.  *Faragher*, 524 U.S. at 778;

*see also Lester*, 290 F. Supp. 2d at 33 (discrete acts do not constitute a hostile environment).

  Moreover, there is no evidence regarding the incidents from 2001 forward to

indicate that they were related to Ms. Tolson's race or gender.  And because Ms. Tolson has not

pointed to evidence linking Mr. Sparrow's calling her a "bitch" with any of these otherwise

race/gender neutral incidents which occurred years later, she has failed to show that the alleged

harassment occurred *because of* her race or gender.  *See Lester*, 290 F. Supp. 2d at 22 (to

establish a prima facie case, a plaintiff must show that the harassment was based on race/gender).

  There is no question but that Ms. Tolson and Mr. Sparrow did not like one

another.  Mr. Flaster made an effort not to assign them to the same projects.  However, "Title VII

is not a general civility code for the American workplace, nor does it serve as a remedy for all

---

Communist, inasmuch as Mr. Sparrow was criticizing Ms. Tolson at the time she was running for
president of the Union.  For the purpose of this Opinion, however, the Court will presume that in
1995 when Mr. Sparrow called Ms. Tolson a "bitch" and a "red bone" and stated that the Union
was "not a place for a black woman" that these were sexually and racially derogatory remarks.

 [10] It is questionable whether Mr. Sparrow's questions at the retreat about how to handle a
coworker he did not like constitute evidence of harassment at all, as there is nothing to show that
Mr. Sparrow's comments were about Ms. Tolson and not about some other employee.  Ms.
Tolson merely believed that Mr. Sparrow's comments were directed at her.  Her colleague, Ms.
Kennedy, believed the statements were either about Ms. Tolson or herself.  Pl.'s Ex., Att. 1
(Kennedy Aff. at 3).

instances of verbal or physical harassment, for it does not purge the workplace of vulgarity."
*Stewart v. Evans*, 275 F.3d 1126, 1133 (D.C. Cir. (2002) (internal citations and quotation marks
omitted). Ms. Tolson has failed to present a prima facie hostile environment claim because she
has not pointed to race/gender-based conduct that was sufficiently pervasive and extreme as to
constitute a change in the conditions of her employment.[11]

Ms. Tolson also alleges that OPM knew that Mr. Sparrow was prone to violence
and yet OPM did nothing. In support of this allegation, she points to a July 10, 2006, summary
of CSEA records indicating that various other OPM employees had suffered abuse by Mr.
Sparrow, including racial slurs and expressions of nonverbal hostility. Pl.'s Ex. 1 (Psychologist's
Memo summarizing CSEA records); *see also* Pl.'s Ex. 3 (record of CSEA email forwarded to
psychologist). She also points to a memo from the CSEA Security Chief indicating that a 2003
parking dispute between Mr. Sparrow and other employees "could escalate into the physical
realm." Pl.'s Ex. 2 (CSEA Chief's Memo). This evidence demonstrates that Mr. Sparrow had
confrontations with *other* OPM employees on more than one occasion. However, it does not
support Ms. Tolson's claim that *she* was subject to a hostile work environment. Nor does this
evidence demonstrate that Mr. Sparrow harassed Ms. Tolson *because of* her race or gender.

B. Retaliation

Ms. Tolson also contends that OPM retaliated against her after she complained of

---

[11] OPM also alleges that it has a valid affirmative defense to Ms. Tolson's hostile
environment claim because it quickly and appropriately responded to Ms. Tolson's complaint.
*Faragher*, 524 U.S. at 807. Because the Court finds insufficient evidence to raise a genuine issue
of material fact regarding Ms. Tolson's hostile environment claim, it does not reach this issue.

discrimination by denying her request for Family Medical Leave.  Title VII prohibits an employer from retaliating against an employee because she "has opposed any practice made an unlawful employment practice by this title, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title."  42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation, a plaintiff must show that: 1) she engaged in protected activity; 2) she suffered from a materially adverse act; and 3) a causal connection exists between the protected activity and the employer's act.  *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006); *Holcomb v. Powell*, 433 F.3d 889, 901-02 (D.C. Cir. 2006).

Retaliatory acts are not limited "to those that are related to employment or occur at the workplace."  *Burlington*, 548 U.S. at 57 (2006).  However, a plaintiff must show that the employer's actions "would have been materially adverse to a reasonable employee."  *Id*.  Further, "an employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Id*.  The Supreme Court has emphasized that the employer's action must be "materially" adverse because the statute protects employees from significant harms and does not protect an employee from "those petty slights or minor annoyances that often take place at work and that all employees experience." *Id*. at 68. Further, an objective "reasonable person" standard applies.  *Id*.  Employees are not protected from "all retaliation, but from retaliation that produces an injury or harm."  *Id*. at 67.  "A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight.  But to retaliate by excluding an employee from a weekly training lunch that contributes

significantly to the employee's professional development might well deter a reasonable employee from complaining about discrimination." *Id*. at 69.

Ms. Tolson fails to present a prima facie case of retaliation because she has not shown a materially adverse act. To prove a retaliation claim, Ms. Taylor must show that she suffered from a retaliatory act that "would have been materially adverse to a reasonable employee," and that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id*. at 57. OPM initially denied her request for Family Medical Leave because she failed to submit adequate documentation. When she submitted such documentation, her request for Family Medical Leave was granted. To the extent that OPM delayed granting Ms. Tolson's request for Family Medical Leave, the delay was caused by Ms. Tolson's failure to earlier provide required medical documentation. Ms. Tolson's retaliation claim fails.[12]

## IV.  CONCLUSION

For the reasons stated above, Defendant's motion to dismiss or for summary

---

[12] The Complaint alleges additional incidents of retaliation, *i.e.*, that OPM retaliated against Ms. Tolson by (1) denying her request for Workers' Compensation and (2) by reducing her performance appraisal from "Exceeds Fully Successful" to "Fully Successful" in April of 2006. Compl. ¶ 28. OPM contends that these incidents cannot constitute retaliation. *See* Def.'s Mem. at 37-38 (Mr. Hershey gave Ms. Tolson the lowered performance rating before Ms. Tolson complained to the EEO counselor; Ms. Tolson alleges, without supporting evidence, that Mr. Hershey altered her Worker's Compensation application). Because Ms. Tolson fails to address these arguments in her Opposition, OPM's motion for summary judgment on these claims is deemed to be conceded. "It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997)).

judgment [Dkt. # 27] will be granted in part and denied in part.  The motion to dismiss will be denied as moot because OPM withdrew its claim based on failure to exhaust administrative remedies.  The motion for summary judgment will be granted and this case will be dismissed.  A memorializing order accompanies this Memorandum Opinion.


Date: May 13, 2009                                    _____/s/_____
                                                      ROSEMARY M. COLLYER
                                                      United States District Judge